J-S27036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| QUADIM BASS | : | |
| | : | |
| Appellant | : | No. 2177 EDA 2024 |

Appeal from the PCRA Order Entered July 18, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009385-2017

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED AUGUST 21, 2025**

Appellant Quadim Bass appeals the order of the Court of Common Pleas of Philadelphia County that denied his petition pursuant to the Post-Conviction Relief Act (PCRA).[1] Appellant contends that his direct appeal counsel was ineffective in failing to argue that Appellant received an unreasonable and excessive sentence. After careful review, we affirm.

The factual background of this case has been previously summarized as follows:

> On July 14, 2017, at approximately 1:15 p.m., Police Officers Nikolas Shannon and Timothy Sedler responded to a radio call of a person screaming at a residence on North 57th Street, Philadelphia, Pennsylvania. When police arrived, they encountered Appellant who identified himself as the father of the victim, a two-year-old child. Appellant directed police to a second floor apartment where they observed the victim laying [*sic*] on the

---

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

bedroom floor, naked and unconscious. Appellant told police officers that the victim had fallen down the stairs. Appellant also told police that he and the victim were the only persons in their residence at the time of the emergency.

First, the police officers, and upon their arrival, the EMT personnel, performed Cardio Pulmonary Resuscitation (CPR) on the unconscious victim. During their efforts to resuscitate the victim, both officers observed that Appellant vacillated back and forth between extreme distresses with loud outbursts to a perfectly calm demeanor. After the first responders failed to resuscitate the victim, the child was transported to Children's Hospital of Philadelphia (CHOP), where he was pronounced dead at approximately 2:16 p.m. The mother of the victim arrived at the hospital after the child was pronounced dead, and was observed arguing with and physically striking Appellant. On July 15, 2017, a post mortem examination was performed and the medical examiner ruled the cause of death to be blunt force trauma, and the manner of death to be homicide.

***Commonwealth v. Bass***, 2344 EDA 2019, 2020 WL 6335983, *1 (Pa.Super. October 29, 2020) (unpublished memorandum) (quoting Trial Court Opinion, 10/29/2019, at 2-3) (brackets omitted).

At Appellant's jury trial, the prosecution presented several witnesses, including Dr. Sam Gulino, Chief Medical Examiner of Philadelphia, who detailed the victim's extensive injuries. Dr. Gulino reported that the victim had bruises all over his body, including on several parts of his chest, abdomen, his back, both arms, the deep muscles of his arms, his right inner thigh, his left lower extremity, and his right leg from his buttock to his ankle. Notes of Testimony (N.T.), Trial, 1/8/19, at 128-130. Several of the bruises had two arc shapes which were consistent with bite marks. ***Id.***

In addition, the victim suffered numerous internal injuries, including a fractured rib which Dr. Gulino opined was caused from being squeezed. ***Id.***

at 129, 151-52.  The victim's liver had been lacerated, causing his abdomen to fill with 600 milliliters of blood, which would have been approximately 60% of the blood in the victim's entire body.  *Id.* at 129, 151-52.  In addition, the victim's kidney was lacerated and he had bruising on his pancreas and large intestine.  *Id.* at 130, 169-70.

Based on his experience as a medical examiner and his review of medical literature, Dr. Gulino contended that it was "inconceivable" that the victim's injuries were caused by a fall down carpeted stairs.  *Id.* at 139, 161-67.  Similarly, Dr. Galino disputed the defense theory that the victim's injuries were caused by the administration of CPR.  *Id.* at 141-44, 149-50.  Rather, Dr. Gulino opined that the victim's injuries were caused by punching, kicking, squeezing, or another crushing force applied by another person.  *Id.*  at 137-38, 144, 151-153, 167.  Dr. Gulino opined with a reasonable degree of medical certainty that the victim's cause of death was blunt force trauma and the manner of his death was homicide.  *Id.* at 125.

The Commonwealth also presented the testimony of the victim's maternal aunt who claimed Appellant had a history of physically abusing the victim and his mother prior to the victim's death.  She recalled an instance where Appellant was fighting with the victim's mother and Appellant hit the victim, who was crying.  *Id.* at 186.  She testified to another incident in which Appellant hit the victim because he was asking for juice.  *Id.* at 194.  In a third instance, she testified that she was so concerned about Appellant's abuse

that she took a photograph of a bruise the victim sustained on his buttocks in early 2016 after she heard Appellant hit the victim.  *Id.* at 197-99.

At the conclusion of Appellant's trial, on January 10, 2019, a jury convicted Appellant of third-degree murder and endangering the welfare of a child (EWOC).  Sentencing was deferred for the preparation of a presentence investigation and a mental health evaluation.  On March 15, 2019, the trial court imposed a term of 20 - 40 years' imprisonment for the third-degree murder conviction along with a concurrent term of 2½ - 5 years' imprisonment for the EWOC conviction, which was graded as a misdemeanor.  Both sentences constituted statutory maximum sentences.[2]

On March 25, 2019, Appellant filed a motion for reconsideration of his sentence which the trial court subsequently denied.  On October 29, 2020, this Court affirmed the judgment of sentence.  On April 27, 2021, our Supreme Court denied Appellant's petition for allowance of appeal.

On April 28, 2022, Appellant filed a *pro se* PCRA petition.  The PCRA court appointed Appellant counsel, who filed an amended petition on May 4, 2023.  On November 14, 2023, the Commonwealth filed a motion to dismiss the petition.  On May 22, 2024, the PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907.  On July 18, 2024, the PCRA court dismissed Appellant's petition.

---

[2] **See** 18 Pa.C.S.A. § 1102(d) ("a person who has been convicted of murder of the third degree … shall be sentenced to a term which shall be fixed by the court at not more than 40 years"); 18 Pa.C.S.A. 106 (the statutory maximum for a first-degree misdemeanor is five years).

Appellant raises one issue for our review on appeal:

Whether the PCRA court erred when it dismissed Appellant Quadim Bass's amended PCRA petition, as Appellant Quadim Bass was entitled to PCRA relief, as appellate counsel Richard Giuliani was ineffective for failing to argue on direct appeal that Appellant Quadim Bass's sentence was unreasonable and manifestly excessive?

Appellant's Brief, at 4.

We address the propriety of the PCRA court's denial order as follows:

[O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

***Commonwealth v. Miranda***, 317 A.3d 1070, 1075 (Pa.Super. 2024) (quoting ***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa.Super. 2019)).

In reviewing Appellant's ineffectiveness challenge, we are guided by the following principles:

It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. ***See Commonwealth v. Pierce***, 515 Pa. 153, 527 A.2d 973, 975–76 (1987); ***Strickland v. Washington***, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The PCRA court may deny an ineffectiveness claim if "the petitioner's evidence fails to meet a single one of these prongs." ***Commonwealth v. Basemore***, 560 Pa. 258, 744 A.2d 717, 738 n.23 (2000)....

> Because courts must presume that counsel was effective, it is the petitioner's burden to prove otherwise. *See Pierce*, *supra*; ***Commonwealth v. Holloway***, 559 Pa. 258, 739 A.2d 1039, 1044 (1999).

***Commonwealth v. Johnson***, 179 A.3d 1105, 1114 (Pa.Super. 2018) (quoting ***Commonwealth v. Natividad***, 938 A.2d 310, 321 (Pa. 2007)).

Specifically, Appellant claims that appellate counsel should have challenged the trial court's sentence, which Appellant characterized as clearly unreasonable. As noted above, the trial court imposed concurrent statutory maximum sentences for Appellant's convictions of third-degree murder and EWOC. In addition, Appellant contends that appellate counsel should have argued that the trial court failed to consider various mitigating factors and his individual circumstances. Appellant points out that he had no prior adult convictions and indicates that his prior record score of 1 was based on a prior adjudication of delinquency for possessing a firearm when he was a juvenile. Appellant emphasizes that he is a high school graduate, had attended college classes, was gainfully employed, and suffered from mental health issues.

To successfully claim that trial counsel was ineffective for failing to pursue a preserved challenge to the discretionary aspects of his sentence on direct appeal, a PCRA petitioner must demonstrate that the underlying sentencing issue has merit. *See **Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa.Super. 2008) ("if the PCRA court can determine from the record that the sentence was not excessive ... then there is no underlying merit to the ineffectiveness claim and the claim must fail").

Appellant's ineffectiveness claims fail as the underlying sentencing claims lack arguable merit. When reviewing a sentence imposed outside the sentencing guidelines, "the essential question is whether the sentence imposed is reasonable, considering the nature and circumstances of the offense, the history and characteristics of the defendant, the opportunity of the sentencing court to observe the defendant, including any presentence investigation, the findings upon which the sentence was based, and the sentencing guidelines." *Commonwealth v. Wallace*, 244 A.3d 1261, 1279 (Pa.Super. 2021) (quoting *Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957, 965 (2007)); 42 Pa.C.S.A. § 9781. Although a trial court is required to consider the sentencing guidelines when imposing sentence,

> the sentencing guidelines are purely advisory in nature – they are not mandatory. A court may therefore use its discretion and sentence defendants outside the guidelines, as long as the sentence does not exceed the maximum sentence allowed by statute. When a court deviates from the sentencing guidelines, it must state the reasons for doing so on the record. This Court may vacate a sentence if it finds the "sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3).

*Commonwealth v. Velez*, 273 A.3d 6, 10 (Pa.Super. 2022) (some citations omitted). *See Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa.Super. 2010) ("Although Pennsylvania's system stands for individualized sentencing, the court is not required to impose the 'minimum possible' confinement").

There is no merit to Appellant's suggestion that the trial court ignored mitigating evidence as the trial court indicated that it had considered the

Presentence Investigation (PSI) report prepared in advance of the sentencing

hearing.

> "Where [PSI] reports exist, we shall continue to presume that the
> sentencing judge was aware of relevant information regarding the
> defendant's character and weighed those considerations along
> with mitigating statutory factors." *Commonwealth v. Devers*,
> 519 Pa. 88, 101-102, 546 A.2d 12, 18 (1988).
>
>> A [PSI] report constitutes the record and speaks for itself.
>> In order to dispel any lingering doubt as to our intention of
>> engaging in an effort of legal purification, we state clearly
>> that [sentencing courts] are under no compulsion to employ
>> checklists or any extended or systematic definitions of their
>> punishment procedure. Having been fully informed by the
>> pre-sentence report, the sentencing court's discretion
>> should not be disturbed. This is particularly true, we repeat,
>> in those circumstances where it can be demonstrated that
>> the judge had any degree of awareness of the sentencing
>> considerations, and there we will presume also that the
>> weighing process took place in a meaningful fashion.
>
> *Id.* at 102, 546 A.2d at 18. *See also Commonwealth v. Tirado*,
> 870 A.2d 362 (Pa.Super. 2005) (explaining if sentencing court has
> benefit of PSI, then law presumes court was aware of relevant
> information regarding appellant's character and mitigating
> factors).

*Commonwealth v. Watson*, 228 A.3d 928, 936 (Pa.Super. 2020).

Likewise, Appellant's challenge to the excessiveness of his sentence is

also meritless. At the sentencing hearing, the trial court stated the following

reasons for imposing the statutory maximum penalties on both convictions:

> Mr. Bass, I've given due consideration to the appropriate sentence
> to be meted out in this case, and I want you to appreciate that
> the sentence imposed is without an emotional basis. Yes, this was
> a horrific killing of a child, a two-year-old, who obviously, had no
> ability to protect himself from his father who conducted himself in
> a manner that resulted in injuries that even the forensic

- 8 -

pathologist found unusually vicious, and this is someone who sees the worst of humanity on a daily basis.

I want you to you know, sir, that I've taken into consideration all the factors I'm obliged to. I've considered the legislative mandates and our appellate court decisions. I've considered the guidelines. I've read the presentence investigation and the mental health evaluation[.] … There is (sic) no psychological factors that would impinge upon this disposition of this case.

There is the concern that even at this juncture [Appellant] has shown no remorse, and I am particularly taken by the fact that he attempted to ascribe culpability to the initial responding police as well as the medics for actions that the jury found he took. So considering society's need for protection, [Appellant's] need for rehabilitation, the court imposes the following sentence …

N.T. Sentencing, 3/15/19, at 37-38.

The trial court's remarks demonstrated it had fully considered all the relevant sentencing guidelines as well as the mitigating factors contained within the PSI and Appellant's mental health evaluation. The trial court also set forth valid reasons from departing from the guidelines given the egregious nature of Appellant's fatal attack on a defenseless two-year old child and his attempt to shift blame to first responders who were attempting to save Appellant's son from harm that Appellant had inflicted.

For these reasons, Appellant is not entitled to collateral relief "[a]s counsel will not be deemed ineffective for failing to raise a meritless claim." *Commonwealth v. Spotz*, 587 Pa. 1, 35, 896 A.2d 1191, 1211 (2006). Accordingly, we affirm the PCRA court's order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/21/2025